Raj V. Abhyanker, California SBN 233284
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:  (650) 965-8731
Facsimile:  (650) 989-2131

Attorney for Plaintiff,
ArmorIQ AI, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMORIQ AI, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>V.<br><br>MAJA HOLDINGS, LLC, a California limited liability company,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>(1) Declaratory Judgment of Non-Infringement and No Likelihood of Confusion;<br><br>(2) Declaratory Judgment of No Unfair Competition;<br><br>(3) Intentional Interference with Contractual Relations; and<br><br>(4) Intentional Interference with Prospective Economic Advantage<br><br>**JURY TRIAL REQUESTED** |

1
INITIAL COMPLAINT
CASE NO.:

1. Plaintiff ArmorIQ AI, Inc. ("Plaintiff"), a Delaware corporation for their Complaint against Defendant Maja Holdings, LLC ("Defendant" or "Maja"), allege as follows:

## INTRODUCTION

2. This case is about a body-armor company's attempt to commandeer a name it does not own, in a market it does not occupy. Plaintiff ArmorIQ AI, Inc. ("ArmorIQ AI" or "Plaintiff") builds enterprise software that secures and governs autonomous artificial-intelligence agents; Defendant MAJA Holdings, LLC ("MAJA" or "Defendant") sells ballistic vests, plates, and body armor. Neither party owns a United States trademark registration for ARMORIQ, and the two could hardly operate further apart.

3. Yet MAJA, after losing a domain-name proceeding that a neutral panel found had no merit - has demanded that ArmorIQ abandon the ARMORIQ name altogether, and has sent infringement notices to ArmorIQ's platforms and domain registrar that caused ArmorIQ's use of its own armoriq.ai domain to be restricted for at least forty-five days. ArmorIQ AI brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to establish that its use of ARMORIQ neither infringes nor unfairly competes with MAJA under the Lanham Act, and under California law to recover for the injury caused by MAJA's baseless takedown campaign

4. Neither party owns a United States trademark registration for ARMORIQ; each has only a pending application. Any rights MAJA asserts therefore arise, if at all, under Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), which protects unregistered marks, and turn on likelihood of confusion. On the undisputed facts, that question can be answered only in Plaintiff's favor: the goods and services are unrelated, move through different channels of trade, and are sold to different, sophisticated purchasers.

5. An actual, present, and justiciable controversy of sufficient immediacy and reality exists between the parties. MAJA has demanded that Plaintiff abandon all use of ARMORIQ, withdraw its pending trademark application, and surrender its domain and social-media accounts; has served Plaintiff with a draft federal complaint; and has stated that it will file suit unless Plaintiff confirms compliance by June 25, 2026. Plaintiff brings this action to obtain a declaration of its rights and to resolve the controversy.

## THE PARTIES

**A. Declaratory Judgment of Non-Infringement as to the ARMORIQ Trademark**

6. Plaintiff ArmorIQ AI, Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business in San Francisco, California. ArmorIQ AI develops and markets enterprise artificial-intelligence security and governance software under the ARMORIQ designation and operates its business at the armoriq.ai domain.

7. Plaintiff is informed and believes, and on that basis alleges, that Defendant MAJA Holdings, LLC is a limited liability company organized under the laws of the State of California, doing business as "ArmorIQ,"

INITIAL COMPLAINT
CASE NO.:

with its principal place of business at 18034 Ventura Boulevard, Suite 181, Encino, California 91316, which is located within this District. MAJA sells ballistic body armor and related personal-protection equipment.

## JURISDICTION AND VENUE

8.  This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act, 15 U.S.C. § 1051 et seq. Defendant has asserted, and has threatened to assert against Plaintiff, claims arising under the Lanham Act, including for infringement of an unregistered mark and false designation of origin under 15 U.S.C. § 1125(a), and Plaintiff seeks a declaration that it is not liable to Defendant under that Act. This Court may declare the rights and legal relations of the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the related claim of unfair competition under 28 U.S.C. § 1338(b) and supplemental jurisdiction over any related state-law claims under 28 U.S.C. § 1367(a).

9.  This Court has personal jurisdiction over Defendant MAJA because MAJA is a California limited liability company with its principal place of business in this District and regularly conducts business in California.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and a substantial part of the events giving rise to the controversy, including the demands and threats described below, occurred in or emanated from this District.

## GENERAL ALLEGATIONS

4
INITIAL COMPLAINT
CASE NO.:

### A. The Parties Offer Unrelated Goods and Services in Wholly Different Fields.

11. ArmorIQ AI develops and provides enterprise software for the security and governance of autonomous artificial-intelligence agents. Its platform is delivered as software-as-a-service and is purchased by engineering, security, and information-technology teams that procure and deploy such software through considered, often multi-stakeholder, evaluations.

12. MAJA sells physical personal-protection equipment, including ballistic body armor, bullet-resistant vests and clothing, hard armor plates, ballistic backpacks, and hand-held protective shields, marketed to civilians, security firms, law enforcement, first responders, and military operators.

13. The parties' respective goods and services are not related. They are neither substitutes nor complements; they are not advertised or sold through the same channels of trade; and they are not purchased by the same consumers. A purchaser seeking a ballistic chest plate is not in the market for a software platform that monitors artificial-intelligence agents, and the reverse is equally true.

### B. Neither Party Owns a United States Trademark Registration for ARMORIQ.

14. ArmorIQ AI is the owner of United States Trademark Application Serial No. 99738504 for the standard-character mark ARMORIQ, filed April 1, 2026, in International Classes 009 and 042. As reflected in the records of the United States Patent and Trademark Office ("USPTO"), that

5
INITIAL COMPLAINT
CASE NO.:

application remains pending and awaiting examination, and no registration has been issued.

15. MAJA is the filer of United States Trademark Application Serial No. 99256941 for the standard-character mark ARMORIQ, filed June 27, 2025, in International Class 009 on an intent-to-use basis. As reflected in the records of the USPTO, that application has been approved for publication but has not been registered, and no registration has been issued.

16. Because neither party owns a United States registration for ARMORIQ, neither party is entitled to the statutory presumptions of validity, ownership, or exclusive nationwide rights that attach to a federal registration. Any rights MAJA asserts therefore arise, if at all, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and any foreign registrations that MAJA may hold confer no rights in the United States.

**C. The Parties' Dispute and MAJA's Threats of Imminent Litigation.**

17. By letter dated June 5, 2026, MAJA, through its counsel, demanded that Plaintiff immediately cease all use of ARMORIQ, withdraw and abandon its pending trademark application, and cease use of the term across all domains and social-media accounts. The letter enclosed a draft complaint and stated that the complaint would be filed without further notice absent compliance. A true and correct copy of the June 5, 2026, letter is attached hereto as **Exhibit A**.

18. By letter dated June 16, 2026, Plaintiff, through counsel, responded, declined MAJA's demands, explained that the parties operate in wholly different markets such that there is no likelihood of confusion, and proposed

a thirty-day standstill to permit the parties to explore a coexistence arrangement. A true and correct copy of the June 16, 2026, letter is attached hereto as **Exhibit B**.

19. By letter dated June 17, 2026, MAJA rejected Plaintiff's proposal, reiterated its demands, and stated that it is prepared to file suit, demanding written confirmation of compliance no later than June 25, 2026. A true and correct copy of the June 17, 2026, letter is attached hereto as **Exhibit C**.

**D. The Prior UDRP Proceeding Was Denied.**

20. Before threatening the present litigation, MAJA already tested its claim to the ARMORIQ designation against the ArmorIQ AI business, and lost. On February 19, 2026, MAJA initiated a proceeding under the Uniform Domain-Name Dispute-Resolution Policy (the "UDRP") before the Forum, seeking to seize the armoriq.ai domain through which the ArmorIQ AI business operates (ADR Forum Case No. FA2602002206245, MAJA Holdings, LLC v. Ram Shanmugam, naming the domain's registrant and Plaintiff's founder as respondent). On March 25, 2026, the Panel (Panelist Jeffrey J. Neuman) denied MAJA's complaint in its entirety, ordered that the armoriq.ai domain remain with its registrant, and found that MAJA had engaged in Reverse Domain Name Hijacking. A true and correct copy of the Panel's decision is attached hereto as **Exhibit D**.

21. In finding Reverse Domain Name Hijacking, the Panel determined that MAJA knew or should have known that it could not succeed under any fair interpretation of the facts. The Panel emphasized that the armoriq.ai domain was registered on August 21, 2024 before each of MAJA's

INITIAL COMPLAINT
CASE NO.:

trademark filings and registrations, all of which date from 2025 and that MAJA failed to establish any common law rights predating that registration. Archived evidence showed that MAJA's own website was in a limited or pre-launch state in 2024. The Panel found that MAJA nonetheless proceeded with a complaint that did not meaningfully address this dispositive timing problem or the registrant's legitimate use.

22. The Panel made further findings that directly refute the premises of MAJA's present infringement threat. The Panel found that the ARMORIQ designation was independently selected as a combination of the concepts of protection and intelligence in the context of artificial intelligence, and that its adoption was consistent with the business's AI-focused services rather than indicative of targeting MAJA. The Panel found no evidence that the registrant targeted MAJA or registered the domain in bad faith, no evidence that the use was pretextual, and no evidence of any attempt to pass off as MAJA. The Panel concluded that the ArmorIQ AI business - artificial-intelligence systems for the security, trust, and governance of AI agents, constitutes a bona fide offering of services in which the registrant holds rights or legitimate interests.

23. Finally, the Panel found that the parties operate in different fields: MAJA in the manufacture and sale of physical protective equipment, and the ArmorIQ AI business in technology services related to artificial intelligence, with no clear competitive overlap. The Panel expressly rejected MAJA's reliance on its asserted future plans, holding that MAJA's speculative assertions regarding possible future expansion into AI-related

services are insufficient to negate the present legitimate use. The Panel further recognized that, to the extent MAJA's arguments sounded in trademark infringement or likelihood of confusion, those claims exceed the limited scope of the Policy. The Panel's threshold observation that armoriq.ai is identical or confusingly similar to MAJA's mark therefore served only the Policy's standing requirement which compares the domain string to the mark and does not consider the relatedness of the parties' goods or services and reflected no finding on the likelihood-of-confusion question presented in this action.

**E.  There Is No Likelihood of Confusion.**

24. In the Ninth Circuit, the likelihood of confusion is assessed under the factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), including (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. Each relevant factor confirms that confusion is not likely here.

25. **Relatedness of the goods and services.**  Ballistic body armor and enterprise AI-security software are about as unrelated as two offerings can be. They serve different needs, are used by different people for different purposes, and share no functional relationship.

26. **Marketing channels.**  MAJA markets through tactical, defense, and personal-safety channels, including industry events such as the SHOT

INITIAL COMPLAINT
CASE NO.:

Show. ArmorIQ AI reaches enterprise software buyers and developers through technical and industry channels. These channels do not overlap in any meaningful way, and a shared presence on general-purpose social-media platforms is not a relevant overlap.

27. **Purchaser sophistication.** Both parties sell to sophisticated, deliberate purchasers who exercise a high degree of care. Enterprise security software is acquired through considered, frequently multi-stakeholder evaluations. Such buyers do not mistake a software vendor for a manufacturer of body armor.

28. **Actual confusion.** MAJA identifies a single alleged incident, one misdirected telephone call relating to a conference. An isolated, misdirected call is de minimis and is not probative evidence of actionable confusion among relevant consumers.

29. **Strength of the mark.** MAJA identifies no recognition or fame in the United States sufficient to extend protection of its asserted mark across unrelated fields.

30. **Intent.** Plaintiff adopted ARMORIQ in good faith for an unrelated enterprise software offering and has at all times operated in a separate field. Coined and suggestive terms are independently adopted across industries every day, precisely because the underlying goods do not compete.

31. The identity of the two designations does not establish a likelihood of confusion where, as here, the goods, the channels of trade, and the purchasers diverge so completely. Identical terms routinely coexist across

unrelated fields because consumers do not believe the offerings share a common source.

32. The parties' shared presence in International Class 009 does not establish that their goods are related. International Class 009 is an administrative grouping that spans an enormous and disparate range of goods, from body armor to anti-spyware software. Common classification is a matter of administrative convenience and is not a measure of relatedness for likelihood-of-confusion purposes.

**F. MAJA's Takedown Campaign and the Resulting Harm to Plaintiff.**

33. MAJA's effort to drive Plaintiff off the ARMORIQ designation was not confined to correspondence. MAJA's own draft complaint admits that, on February 4, 2026, MAJA submitted infringement notices to LinkedIn, X/Twitter, GoDaddy, GitHub, YouTube, and Google regarding Plaintiff's use of the ARMORIQ designation. (See **Exhibit A**, ¶ 30.) Through those notices, MAJA sought to induce third-party platforms to suspend, disable, restrict, or remove Plaintiff's accounts, content, and domain.

34. Plaintiff received infringement notices forwarded by GitHub and by GoDaddy, Plaintiff's domain registrar, as a result of MAJA's submissions. In response to MAJA's notice, GoDaddy restricted Plaintiff's use of the armoriq.ai domain for a period of at least forty-five (45) days, disrupting Plaintiff's operation of its business at that domain.

35. MAJA submitted these infringement notices even though it owned no United States trademark registration, even though the armoriq.ai domain had been registered before any of MAJA's trademark filings, and even

though MAJA had no good-faith basis to believe that Plaintiff's artificial-intelligence security software was likely to be confused with MAJA's body armor. As a neutral UDRP panel later found, MAJA knew or should have known that it could not succeed on the very theory underlying its notices, and there was no evidence that Plaintiff targeted MAJA or acted in bad faith. MAJA's interference was knowing, intentional, and without privilege or justification.

36. MAJA's notices were a substantial factor in causing harm to Plaintiff, including the restriction of Plaintiff's armoriq.ai domain for at least forty-five days, disruption of Plaintiff's relationships with GoDaddy, GitHub, and other platforms, and injury to Plaintiff's business, goodwill, and prospective economic relationships.

## FIRST CLAIM FOR RELIEF

*(Declaratory Judgment of Non-Infringement and No Likelihood of Confusion - 15 U.S.C. § 1125(a); 28 U.S.C. §§ 2201–2202)*

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 35, inclusive, as though fully set forth herein.

38. An actual, present, and justiciable controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights in the designation ARMORIQ. MAJA contends that Plaintiff's use of ARMORIQ in connection with enterprise AI-security software infringes MAJA's asserted rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is likely to cause confusion with MAJA's use of the term in connection with body armor. Plaintiff contends the opposite.

39. Plaintiff is entitled to, and seeks, a declaration that its use of ARMORIQ in connection with enterprise artificial-intelligence security software is not likely to cause confusion with MAJA's use of ARMORIQ in connection with body armor and related personal-protection equipment, and therefore does not infringe any trademark rights of MAJA under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40. A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties with respect to the ARMORIQ designation.

41. Plaintiff has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF

*(Declaratory Judgment of No Unfair Competition or False Designation of Origin - 15 U.S.C. § 1125(a); Cal. Bus. & Prof. Code § 17200; California Common Law; 28 U.S.C. §§ 2201–2202)*

42. Plaintiff realleges and incorporates by reference paragraphs 1 through 33, inclusive, as though fully set forth herein.

43. MAJA contends that Plaintiff's use of ARMORIQ constitutes false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition under California Business and Professions Code section 17200 and California common law. Plaintiff contends the opposite.

44. Plaintiff is entitled to, and seeks, a declaration that because its use of ARMORIQ is not likely to cause confusion with MAJA's goods, that use does not constitute false designation of origin or unfair competition under

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), does not constitute unlawful, unfair, or fraudulent business acts or practices under California Business and Professions Code section 17200, and does not constitute unfair competition under California common law.

45. An actual, present, and justiciable controversy exists, and a judicial declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

46. Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

*(Intentional Interference with Contractual Relations -*

*California Common Law)*

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 33, inclusive, as though fully set forth herein.

48. At all relevant times, Plaintiff had valid and existing contractual relationships with third-party service providers, including its domain registration agreement with GoDaddy for the armoriq.ai domain and its terms of service with GitHub, under which Plaintiff was entitled to register and use the domain and to maintain its accounts and content.

49. MAJA knew of these contractual relationships. Indeed, MAJA directed its February 4, 2026 infringement notices to those very providers, including GoDaddy and GitHub.

50. MAJA intended its infringement notices to induce those providers to suspend, restrict, disrupt, or terminate Plaintiff's contractual relationships. MAJA's notices actually disrupted those relationships, including by causing

INITIAL COMPLAINT
CASE NO.:

GoDaddy to restrict Plaintiff's use of the armoriq.ai domain for at least forty-five days.

51. As a direct and proximate result of MAJA's conduct, Plaintiff has been damaged in an amount to be proven at trial. MAJA acted with oppression, fraud, or malice, entitling Plaintiff to exemplary and punitive damages.

## FOURTH CLAIM FOR RELIEF

*(Intentional Interference with Prospective Economic Advantage under California Common Law)*

52. Plaintiff realleges and incorporates by reference paragraphs 1 through 50, inclusive, as though fully set forth herein.

53. At all relevant times, Plaintiff had existing and prospective economic relationships with third-party platforms and with the users, developers, customers, and members of the public that Plaintiff reaches through the armoriq.ai domain and its associated accounts, each carrying the probability of future economic benefit to Plaintiff.

54. MAJA knew of these relationships and intentionally interfered with them by submitting baseless infringement notices to the platforms through which Plaintiff maintains them.

55. MAJA's conduct was independently wrongful. MAJA made a knowing, bad-faith assertion of trademark rights that it knew or should have known it could not support - conduct that a neutral UDRP panel found to constitute Reverse Domain Name Hijacking - and that conduct actually disrupted Plaintiff's economic relationships, including by causing the

INITIAL COMPLAINT
CASE NO.:

restriction of the armoriq.ai domain for at least forty-five days.

56. As a direct and proximate result of MAJA's conduct, Plaintiff has suffered economic harm in an amount to be proven at trial. MAJA acted with oppression, fraud, or malice, entitling Plaintiff to exemplary and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For a declaration that Plaintiff's use of the designation ARMORIQ in connection with enterprise artificial-intelligence security software does not infringe any trademark rights of Defendant, including under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

2. For a declaration that Plaintiff's use of ARMORIQ is not likely to cause confusion with Defendant's use of ARMORIQ in connection with body armor and related personal-protection equipment;

3. For a declaration that Plaintiff's use of ARMORIQ does not constitute false designation of origin or unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or unfair competition under California Business and Professions Code section 17200 or California common law;

4. For a declaration that Plaintiff is entitled to continue using the designation ARMORIQ, including in the armoriq.ai domain name, in connection with its goods and services;

5. On the Third and Fourth Claims for Relief, for compensatory and

consequential damages in an amount to be proven at trial;

6. On the Third and Fourth Claims for Relief, for exemplary and punitive damages according to proof;

7. For a permanent injunction requiring MAJA to withdraw its February 4, 2026 infringement notices and restraining MAJA from submitting further infringement or takedown notices to third parties concerning Plaintiff's use of the ARMORIQ designation;

8. For Plaintiff's costs of suit incurred herein;

9. For Plaintiff's reasonable attorneys' fees as permitted by law, including under 15 U.S.C. § 1117(a); and

10. For such other and further relief as the Court deems just and proper.


Dated: June 23, 2026                    Respectfully submitted,
                                        LEGALFORCE RAPC WORLDWIDE P.C.


                                        /s/ Raj V. Abhyanker
                                        Raj V. Abhyanker
                                        Attorney for Plaintiff,
                                        ArmorIQ AI, Inc.

INITIAL COMPLAINT
CASE NO.:

## **JURY TRIAL REQUESTED**

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.


Dated: June 23, 2026                          Respectfully submitted,
                                              LEGALFORCE RAPC WORLDWIDE P.C.


                                              /s/ Raj V. Abhyanker
                                              Raj V. Abhyanker
                                              Attorney for Plaintiff,
                                              ArmorIQ AI, Inc.

INITIAL COMPLAINT
CASE NO.: